UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

MAURITA HOLMES
18930 Loras Lane
C.C. Hills, IL 60478

      Plaintiff,

    v.                          Case No: 16-CV-1727

CITY OF MILWAUKEE
City Hall, Room 205
200 East Wells Street
Milwaukee, WI 53202

      Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, Maurita Holmes, by her counsel, HEINS EMPLOYMENT LAW PRACTICE LLC, by Attorney Janet L. Heins, as and for a claim against the Defendant, alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1.    This is a 42 U.S.C. §§ 1981, 1983, and 1988, *et seq*., and 42 U.S.C. §§ 2000e, *et seq.,* statutory action, *inter alia,* seeking back pay, compensatory damages, attorney fees, and all other damages available from the Defendant for violations of the Plaintiff's rights to equal employment and equal protection of the laws of the United States.

2.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under Title VII of the Civil Rights Act of 1964, as amended, (Title VII), 42 U.S.C. §§ 2000e, *et seq.;* the Family & Medical Leave Act ("FMLA"), 29 U.S.C.

§825 *et seq.*; and 28 U.S.C. § 1343, as this case involves the deprivation of civil rights.

3. The unlawful employment practices giving rise to the Plaintiff's claims occurred within the Eastern District of Wisconsin, and venue is therefore proper in this District pursuant to 28 U.S.C § 1391(b), *inter alia.*

## THE PARTIES

4. Plaintiff, Maurita Holmes, is an African-American adult female resident of the State of Illinois, residing at 18930 Loras Lane, C.C. Hills, IL 60478. At all times material herein, Plaintiff resided in Milwaukee County, Wisconsin.

5. Defendant, City of Milwaukee was, at all times material herein, a Wisconsin municipal corporation, with a principal address of City Hall, Room 205, 200 East Wells Street, Milwaukee, WI 53202. At all times material herein, Defendant acted "under color of law" within the meaning of 42 U.S.C. § 1983.

## THE FACTS

6. Defendant is a covered employer for purposes of Title VII.

7. Defendant's employees are majority Caucasian and male.

8. Plaintiff was hired by Defendant's Police Department on or about June 9, 2014 as a Crime Analyst in the Department Office of Management Analysis and Planning ("OMAP").

9. At all times material herein, Plaintiff performed her work duties in accordance with the reasonable expectations of the Defendant.

10. At all times material herein, Plaintiff was the only female African-American Crime Analyst working for Defendant.

11. Defendant routinely holds female members of the Department to higher standards than male members, treating the female department members worse than male officers in

2

violation of their right to Equal Protection of the laws.

12. Defendant maintains a "good ol' boys club" atmosphere at the Department that has persisted throughout Plaintiff's career with the Defendant, regardless of the official policies allegedly prohibiting such conduct.

13. Defendant routinely holds African-American members of the Department to higher standards than non-African-American members, treating the African-American members worse than non-African-American members in violation of their right to Equal Protection of the laws of the United States.

14. From October 2014 until Plaintiff's termination, Sergeant Lisa Gagliano (Hispanic female) supervised Plaintiff.

15. From August 2015 until Plaintiff's termination, Sergeant Mark Krowski (white male) also supervised Plaintiff.

16. At all times material herein, Lieutenant Derrick Harris (African American male) supervised Sgt. Gagliano.

17. From the start of her employment by Defendant until April 23, 2015, Lt. Harris met with Plaintiff and other Crime Analysts regarding their assignments,

18. On or about April 23, 2015, Plaintiff told her supervising Captain, Regina Howard, about a racially derogatory statement made by Captain David Salazar the previous day during a training session Plaintiff attended, a comment about which Lt. Harris laughed during the training session.

19. Defendant confirmed that the racist statement was made as alleged by Plaintiff but did not adequately discipline the captain who made the comment.

20. After April 23, 2015, Lt. Harris stopped speaking to Plaintiff about assigned

3

projects or giving her new assignments.

21. Instead, Lt. Harris communicated with Sgt. Gagliano any instructions he had for Plaintiff.

22. Sgt. Gagliano told Plaintiff in what Plaintiff interpreted as a warning "that I got Captain Salazar in trouble and he could get disciplined because of me."

23. After April 23, 2015, Lt. Harris refused to meet with Plaintiff.

24. After April 23, 2015, when Sgt. Gagliano was not familiar with CompStat work assigned to Plaintiff and told Lt. Harris that, Lt. Harris took the assignment away from Plaintiff and gave it to the other analysts to complete.

25. After April 23, 2015, Lt. Harris continued to communicate directly with the other crime analysts employed by Defendant.

26. In June 2015, Plaintiff was concerned about Lt. Harris' different treatment of her compared to the other analysts, and she went to Lt. Harris to discuss it.

27. In June 2015, Lt. Harris told Plaintiff "I needed to learn when to pick my battles, and that I shouldn't have said anything at all. He told me now everyone thinks I filed a complaint against Captain Salazar and that I'm looked at as a troublemaker and that's how you get blackballed in MPD." "Lt. Harris also said people could make it difficult for me there if I don't learn how the system works. He said he didn't think [Salazar's comment] was a big deal and that's the culture of MPD."

28. In June 2015, Plaintiff told Lt. Harris that she did not intend to get anyone in trouble by reporting the comment, but she "felt that with all that was going on with the community regarding the police, the comments shouldn't have been made in that setting due to the fact there were non-MPD employees and civilians there."

4

29. After the June 2015 discussion between Plaintiff and Lt. Harris, they agreed to move forward and Lt. Harris told Plaintiff that he would make an effort to include her in the work process again.

30. Captain Howard was transferred out of OMAP on July 28, 2015, and Capt. Mark Stanmeyer (white male) became Defendant's commanding officer of OMAP.

31. When Capt. Stanmeyer took over OMAP, Lt. Harris assumed greater responsibility for supervising OMAP.

32. On August 4, 2015, Sgt. Gagliano told Plaintiff that "per Lt. Harris, things would be changing now," and Lt. Harris was "bringing the hammer down" with new rules; Sgt. Gagliano informed Plaintiff that she could not use her cell phone in the office or wear headphones.

33. Plaintiff adhered to the new rules (that were not in writing) but she observed that the other analysts did not, and she reported that to Sgt. Gagliano, who took no action to enforce these rules against other analysts.

34. Plaintiff complained to Sgt. Gagliano on September 22, 2015, telling her "I felt I was being picked on because Lt. Harris was upset with me over the training incident." She again complained of not being included in the work process, having projects removed, and being reprimanded for things others did as well.

35. By September 22, 2015, four of the other five African-American employees at OMAP as of April 2015 were gone—Detective Carolyn Tillman, Captain Howard, Officer Monique Anderson, and Sgt. Denmark Morrison. Only Plaintiff and Lt. Harris remained.

36. On September 23, 2015, Sgt. Gagliano told Plaintiff that Lt. Harris had mentioned he saw Plaintiff on her phone, and she told Plaintiff, "Per Lt. Harris when he walks into the room

5

you can't be on your phone."

37. Later on September 23, 2015, Sgt. Krowski and Sgt. Gagliano summoned Plaintiff to a meeting and told her she was being placed on a 60-day performance improvement plan.

38. The two sergeants did not provide a written plan to Plaintiff, but merely read notes from a pad about alleged minor and inconsequential deficiencies in Plaintiff's performance.

39. Plaintiff filed internal complaints and an EEOC complaint after being presented with the plan.

40. On or about October 1, 2015, Plaintiff filed an employment discrimination and retaliation complaint against Defendant with the EEOC as EEOC Case No. 443201600008C, and cross-filed with the ERD, designated as ERD Case No. CR201503016. The EEOC issued Plaintiff a Notice of Right to Sue for this case on December 2, 2016, which she received on December 5, 2016.

41. Defendant continued to accuse Plaintiff of unfounded performance deficiencies while it investigated Plaintiff.

42. The investigator's conduct of the investigation was accusatory and retaliatory against Plaintiff.

43. Plaintiff successfully completed her 6-month probationary period at Defendant on December 9, 2015.

44. During her probationary period, Plaintiff received satisfactory performance evaluations.

45. Sergeants Mark Krowski and Lisa Gagliano served Plaintiff with a performance

6

improvement plan on January 7, 2016, supposedly governing the period of August 31, 2015 through December 31, 2015. The plan included a review date of January 22, 2016.

46. Plaintiff made a second verbal complaint to Defendant's Internal Affairs Division on January 7, 2016, followed by a written complaint dated January 9, 2016 that she filed on January 11, 2016 with Capt. Stanmeyer and Defendant's Internal Affairs Division.

47. Other analysts, who did not complain of discrimination, and who were not African-American or female, were not disciplined or placed on a performance improvement plan despite engaging in the same or similar conduct to Plaintiff.

48. Defendant terminated Plaintiff's employment on January 12, 2016, with no explanation. Defendant served the termination letter on Plaintiff at home after work on January 15, 2016.

49. On or about January 21, 2016, Plaintiff filed a discrimination and retaliation complaint against Defendant with the Wisconsin Equal Rights Division ("ERD"), designated as ERD Case No. CR201600247, and cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Case No. 26G201600387C. The EEOC issued Plaintiff a Notice of Right to Sue for this case on December 2, 2016, which she received on December 5, 2016.

50. Plaintiff has exhausted all of her administrative remedies and has satisfied all conditions precedent to bringing this action.

51. At all times material herein, Defendants knew or should have known that Plaintiff was entitled to the full protection of federal and state laws against race and sex discrimination and retaliation.

52. Defendant knew, or should have known, that it had a duty to evaluate whether

7

Case 2:16-cv-01727-NJ   Filed 12/31/16   Page 7 of 12   Document 1

federal and state laws were being violated in its treatment of the Plaintiff's situation, but they, with deliberate indifference and without rational basis, disregarded that duty in allowing the Plaintiff to be treated less favorably than others outside her protected classes without taking into account her protected status under federal and state law.

53. Defendant had a duty to consider whether the Plaintiff's treatment was appropriate under their own policies and under the federal and state laws prohibiting discrimination in Plaintiff's employment with them, but they ignored that duty in allowing the harassment, discrimination and retaliation to continue.

54. Defendant had a custom or policy of discrimination against females and African-Americans.

55. Defendant had a custom or policy of retaliation against employees who complained of unlawful discrimination.

56. The discriminatory customs, policies and practices referred to in the above paragraphs were a proximate cause of Plaintiff's injuries.

### FIRST CLAIM FOR RELIEF—42 U.S.C. §§ 1983, 1988

57. Plaintiff realleges and incorporates paragraphs 1-56 of this complaint by reference thereto.

58. Defendant unlawfully discriminated against Plaintiff on the basis of her sex (female) in the terms and conditions of her employment and in terminating her employment in violation of her equal employment rights and equal protection rights under the First and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. §§ 1983, 1988, as amended.

59. Defendant unlawfully discriminated against Plaintiff on the basis of her race

8

(African-American) in the terms and conditions of her employment and in terminating her employment in violation of her equal employment rights and equal protection rights under the First and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. §§ 1983, 1988, as amended.

60. As a direct, foreseeable, and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered injury and damages in the form of lost wages, lost employment benefits, loss of reputation among her co-workers, damage to her career, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

## SECOND CLAIM FOR RELIEF – TITLE VII (SEX)

61. Plaintiff realleges and incorporates paragraphs 1-60 of this complaint by reference thereto.

62. Defendant discriminated against Plaintiff based on her sex (female) in her terms and conditions of employment and in terminating her employment in intentional and/or reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

63. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among her co-workers, damage to her career, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

## THIRD CLAIM FOR RELIEF--TITLE VII (RACE)

64. Plaintiff realleges and incorporates paragraphs 1-63 of this complaint by reference thereto.

9

65. Defendant discriminated against Plaintiff based on her race (African-American) in the terms and conditions of her employment and in terminating her employment in intentional and/or reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

66. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among her co-workers, damage to her career, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

### FOURTH CLAIM FOR RELIEF – TITLE VII (RETALIATION)

67. Plaintiff realleges and incorporates paragraphs 1-66 of this complaint by reference thereto.

68. Defendant intentionally retaliated against Plaintiff by terminating her employment for opposing unlawful discrimination in the workplace in intentional and/or reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-3 *et seq.*

69. As a result of Defendant's intentional retaliation, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among her co-workers, damage to her career, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

### FIFTH CLAIM FOR RELIEF—42 U.S.C. § 1981 (RACE)

70. Plaintiff realleges and incorporates paragraphs 1-70 of this complaint by reference thereto.

71. Defendant discriminated against Plaintiff based on her race (African-American) in

her terms and conditions of employment and in terminating her employment in intentional and/or reckless disregard of her federally protected rights under the Thirteenth Amendment to the U.S. Constitution as protected by 42 U.S.C. § 1981, as amended.

72. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among her co-workers, damage to her career, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

## SIXTH CLAIM FOR RELIEF—42 U.S.C. § 1981 (RETALIATION)

73. Plaintiff realleges and incorporates paragraphs 1-72 of this complaint by reference thereto.

74. Defendant retaliated against Plaintiff in terminating her employment for opposing race discrimination at work in intentional and/or reckless disregard of her federally protected rights under the Thirteenth Amendment to the U.S. Constitution as protected by 42 U.S.C. § 1981, as amended.

75. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost employment benefits, loss of reputation among her co-workers, damage to her career, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Issue a declaratory judgment that the acts, policies, practices and procedures of Defendants violated the rights of the Plaintiff under the First, Thirteenth and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. §§ 1981, 1983, 1988, *et seq.*;

2. Issue a declaratory judgment that the acts, policies, practices and procedures of Defendant violated the rights of the Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*;

3. Issue a permanent injunction against future acts, policies, practices and procedures that violate the First, Thirteenth and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. §§ 1981, 1983, 1988, *et seq.*, by Defendant;

4. Issue a permanent injunction against future acts, policies, practices and procedures that violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by Defendant;

5. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory and punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

6. Grant to Plaintiff her attorney fees, costs and disbursements as provided by 42 U.S.C. § 2000e-5(k), and all other applicable statutes and provisions; and

7. Grant to Plaintiff whatever other relief this Court deems just and equitable.

Dated this 31st day of December, 2016.

                                          HEINS EMPLOYMENT LAW PRACTICE LLC
                                          Counsel for the Plaintiff

                                          *s/ Janet L. Heins*
                                          Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
1001 West Glen Oaks Lane, Suite 103
Mequon, WI 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com